UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOYE WILLIAMS,                      :    CIVIL NO. **3:04-CV-2155**
                                    :
            Plaintiff               :
                                    :    (Magistrate Judge Smyser)
      v.                            :
                                    :
KENNETH HOLLIBAUGH, Unit Manager:
SCI Huntingdon;                     :
SERGEANT EMEIGH,                    :
Corrections Officer, SCI            :
Huntingdon;                         :
CORRECTIONS OFFICER WALL,           :
SCI Huntingdon; and                 :
CORRECTIONS OFFICER RHODES,         :
SCI Huntingdon,                     :
                                    :
            Defendants              :


**MEMORANDUM AND ORDER**


      The plaintiff, a state prisoner, commenced this 42

U.S.C. § 1983 action by filing a complaint on September 27,

2004.  On January 10, 2005, the plaintiff filed an amended

complaint, and on May 31, 2005, he filed a second amended

complaint.


      The defendants named in the second amended complaint

are: 1) Kenneth Hollibaugh, a unit manager at the State

Correctional Institution at Huntingdon (SCI-Huntingdon); 2)

Thomas Emeigh, a sergeant at SCI-Huntingdon; 3) Mark Wall, a
corrections officer at SCI-Huntingdon; and 4) Dustan Rhodes, a
corrections officer at SCI-Huntingdon.  The plaintiff claims
that the defendants violated the Eighth Amendment by failing to
protect him from an attack by another prisoner.

    The parties consented to proceed before a magistrate
judge pursuant to 28 U.S.C. § 636(c).  The case is currently
scheduled for a pre trial conference on January 19, 2006 and
for a jury trial beginning on February 6, 2006.

    Currently pending is a motion for summary judgment
filed by the defendants.

    Summary judgment is appropriate if the "pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden
of demonstrating the absence of any genuine issue of material
fact, though the non-moving party must make a showing
sufficient to establish the existence of each element of his

2

case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003).  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

The defendants contend that they are entitled to summary judgment because the plaintiff failed to exhaust available administrative remedies before filing suit.

42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

4

The Pennsylvania Department of Corrections has implemented an Official Inmate Grievance System. The grievance system is governed by Administrative Directive 804 (DC-ADM 804). DC-ADM 804 sets forth a three-tier administrative remedy system. Pursuant to DC-ADM 804, an inmate is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based. The inmate is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. From there the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals.

On October 29, 2003, the plaintiff's cellmate, Ricardo Nobles, attacked the plaintiff in the dining hall and cut the plaintiff's face with a razor. *Defendants' Statement of Material Facts Not in Dispute at ¶25 and the Plaintiff's Statement of Material Facts Not in Dispute at ¶25.*

The plaintiff filed a grievance on October 30, 2003, regarding the staff's failure to move him to a different cell. *Id. at ¶35.* The grievance was assigned grievance number 66369. *Id.* The plaintiff's grievance stated:

> My Grievance is against the 2 to 10 staff of E
> Blk Rhodes, Wall, Sgt. Roth. Reason I repeatly
> [sic] asked that Nobles be moved or move me out
> the same cell we were not getting along.  For 3
> week[s] they would not move us. C/O Rhodes &
> Wall joked about the problem. Now on Oct 29
> Inmate Nobles pack his belonging[s] put them on
> his bunk came to the kitchen and assaulted me
> with a razor cutting me across the face. I
> intend to take this matter all the way [.]  I
> seek compensation for my injury which will be
> permanent scarring. If these officers would
> have acted with due assiduousness this could
> have been avoided.

*Doc. 32, Exhibit 14.* In response to the prompt on the grievance

form to list actions taken and staff contacted before

submitting the grievance, the plaintiff wrote: "Asked Sgt.

Amaker of E Blk also C/O Rhodes, C/O Wall, C/O Roth  Also put a

cell agreement in with inmate Grasty for him to move with me to

C/O Wall but would not move us." *Id.*  The plaintiff did not

name defendant Hollibaugh in his grievance. *Id.*


By a response dated November 7, 2003, defendant

Hollibaugh, the Unit Manger on E Block, responded to the

plaintiff's grievance. *Doc. 32, Exhibit 15.*  According to

defendant Hollibaugh, he sent the response to the plaintiff at

SCI-Smithfield where the plaintiff had been transferred on

November 4, 2003. *Defendants' Statement of Material Facts Not

in Dispute at ¶38.*  According to the plaintiff, however, he did

6

not receive defendant Hollibaugh's response to his grievance
until January 6, 2004. *Doc. 37, Exhibit 8 at ¶26.*

On November 26, 2003, the plaintiff submitted a written
Inmate Request to Staff to Lisa Hollibaugh in which he stated:
"I would like a copy of DC 804 official inmate grievance
Initial Review Response to #66369. I was told you could provide
me with this." *Plaintiff's Statement of Material Facts Not in
Dispute - Additional Material Facts Not in Dispute at ¶62 and
Defendants' Statement of Material Facts Not in Dispute -
Defendants' Response to Plaintiff's Additional Material Facts
at ¶62.* On December 2, Ms. Hollibaugh responded "Did you not
receive a copy?" *Id. at ¶63.*

On December 2, 2003, the plaintiff filed a grievance
(assigned number 69235) to Diana Baney, the Facility Grievance
Coordinator at SCI Huntingdon. *Id. at ¶64.* In that grievance,
after complaining of the loss of some of his property after his
transfer from SCI Huntingdon, the plaintiff wrote: "Also, I
have not received my response to grievance #66369 and it well
over the time that I should have a response." *Id. at ¶65.*

On December 4, 2003, the plaintiff wrote an Inmate Request to Staff to Lisa Hollibaugh responding to her reply to his request of November 26, 2003. *Id. at* ¶66.  In the request, the plaintiff stated that no he did not receive a copy of the response to his grievance and he again asked that he be sent a copy. *Id. at* ¶67.  On December 8, 2003, Ms. Hollibaugh replied: "Mr. Williams, write the records department and they can get you one out of your DC-15.  I do not have a copy in my office. Since it happened at SCI Huntingdon, make sure you mention that the grievance is from Huntingdon." *Doc. 42, Exhibit 26.*

On December 15, 2003, Diana Baney rejected the plaintiff's grievance numbered 69235 as untimely. *Plaintiff's Statement of Material Facts Not in Dispute - Additional Material Facts Not in Dispute at* ¶69 *and Defendants' Statement of Material Facts Not in Dispute - Defendants' Response to Plaintiff's Additional Material Facts at* ¶69.

On December 16, 2003, the plaintiff asked his counselor at SCI-Smithfield to e-mail his former counselor at SCI-Huntingdon to request a copy of the response to grievance number 66369. *Id. at* ¶70.

8

Shortly after December 23, 2003, the plaintiff received a letter from the Secretary's Office of Inmate Grievances and Appeals. *Id. at* ¶71.  The Secretary's Office told the plaintiff that they were filing his appeal without action because he had not enclosed the proper documentation, including copies of the Initial Review, the Appeal to the Facility Manager, and the Facility Manager's decision. *Id. at* ¶72.

On December 25, 2003, the plaintiff filed grievance number 72226 with Diana Baney at SCI Huntingdon. *Id. at* ¶73. In grievance number 72226, the plaintiff again complained that he had not received a response to grievance number 66369. *Id. at* ¶74.  The plaintiff attached a letter to the grievance in which he asked for an extension of time to file due to his transfer out of SCI Huntingdon. *Id. at* ¶75.

On December 30, the plaintiff filed an appeal of the denial of his initial grievance (#66369) to the Facility Manager of SCI Huntingdon. *Id. at* ¶76 *& Doc. 38, Exhibit 16.* The plaintiff attached a letter to the appeal in which he explained that it was filed late because he had not received a copy of the Initial Review Response. *Plaintiff's Statement of Material Facts Not in Dispute - Additional Material Facts Not*

*in Dispute at ¶77 and Defendants' Statement of Material Facts Not in Dispute - Defendants' Response to Plaintiff's Additional Material Facts at ¶77.* According to the plaintiff, he finally received his copy of the Initial Review Response to grievance #66369 on January 6, 2004. *Doc. 37, Exhibit 8 at ¶26.*

On January 13, 2004, Diana Baney rejected grievance 72226 on the basis that the issue presented had been reviewed and addressed previously. *Doc. 43, Exhibit 31.* Ms. Baney wrote that defendant Hollibaugh had provided the plaintiff with a response to grievance 66369 on November 7, 2003 and that the response was specifically addressed to the plaintiff at SCI-Smithfield. *Id.* Ms. Baney stated that because the plaintiff indicated that he did not receive the response, she was providing a copy of the response for his file. *Id.*

The plaintiff's appeal of the denial of grievance #66369 was denied at the Second Level by Acting Superintendent Grace on January 27, 2004 on the basis that it was untimely and noncompliant with the guidelines set forth in DC-ADM 804. *Defendants' Statement of Material Facts Not in Dispute at ¶42 and the Plaintiff's Statement of Material Facts Not in Dispute at ¶42.* Grace determined that the plaintiff's asserted reason

10

for filing the appeal late was without merit.  *Doc. 38, Exhibit 17.*  On February 6, 2004, the plaintiff filed an appeal to the Secretary's Office of Inmate Grievances and Appeals. *Doc. 38, Exhibit 18.* On March 3, 2004, the Secretary's Office dismissed the plaintiff's appeal on the basis that Superintendent Grace had ruled that the plaintiff's appeal from initial review was untimely and that, accordingly, the plaintiff's appeal to final review could not be accepted. *Doc. 39, Exhibit 19.*

The defendants contend that the plaintiff did not substantially comply with the administrative remedy process by not filing a timely appeal of the initial response to his grievance.   Defendant Hollibaugh's response to the plaintiff's grievance is dated November 7, 2003.   The plaintiff did not file his appeal of that response until December 30, 2003, beyond the five day deadline for filing an appeal to the Facility Manager.   The defendants contend that because the plaintiff did not file a timely appeal he has failed to properly exhaust his administrative remedies.

In *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit held that 42 U.S.C. § 1997e(a)'s exhaustion requirement includes a

11

procedural default component.   In other words, § 1997e(a)

requires more than simple exhaustion - i.e. more than that

there is no further process available to the inmate within the

grievance system. *Id. at 227-231.*  Section 1997e(a) requires

that an inmate follow the procedural requirements set forth in

the administrative remedy process that is available to him. *Id.

at 231.*  The "prison grievance procedures supply the yardstick

for measuring procedural default." *Id.*

The first question is whether the inmate has exhausted

administrative remedies in a literal sense - whether further

avenues of relief are available to him within the prison

grievance process. *Id. at 232.*  In the instant case, there are

not further avenues of relief available to the plaintiff within

the grievance system.  The plaintiff filed a grievance

regarding the staff at SCI-Huntingdon not protecting him from

his cell mate, he filed an appeal (rejected as untimely) of the

initial response to his grievance, and he filed a final appeal

(dismissed because his initial appeal was rejected as untimely)

to the Secretary's Office of Inmate Grievances and Appeals.

Any further grievances or appeals at this time regarding the

defendants' purported failure to protect him from the attack by

his cellmate would be untimely.  Accordingly, the plaintiff has
no further administrative process available to him.

Since the plaintiff has no further administrative
process available to him, the question becomes whether the
plaintiff has procedurally defaulted his claim by not timely
filing an appeal of the initial response to his grievance.

The plaintiff contends that the reason he did not file
a timely appeal of the initial response to his grievance was
because he did not receive his copy of the response until
January 6, 2004.

DC-ADM 804 VI.C.1.a  provides that "[t]he Initial
Review decision from the Grievance Officer must be received by
the inmate before any appeal to the Facility Manager can be
sought."  Thus, if the plaintiff did not receive the response
to his grievance until January 6, 2004, as he contends, he
could not have filed an appeal earlier than he did (in fact his
appeal would be premature not late).

There is a genuine factual dispute about the date that
the plaintiff received the response to his appeal - the

13

defendants contend the response was sent on November 7, 2003
but the plaintiff contends he did not receive it until January
6, 2004.[1]  This factual dispute is material to the question
whether the plaintiff procedurally defaulted his claim by not
filing a timely appeal.  Given that there is a material factual
dispute, the defendants are not entitled to summary judgment on
the basis that the plaintiff procedurally defaulted him claim
by not filing a timely appeal.[2]

     Apart from their argument regarding the late appeal,
the defendants contend that the plaintiff procedurally

---

[1] The defendants argue that the plaintiff's statement in his
appeal of the response to his grievance that he objects to the
findings of the initial review indicates that he had received
the response before he filed his appeal on December 30, 2003
and that, therefore, his assertion that he did not receive the
response until January 6, 2004 is false.  It is not the
function of the court in the summary judgment context to weigh
the evidence and determine whether or not that plaintiff's
statement that he did not receive the response until January 6,
2004 is credible.

[2] We note that in their reply brief the defendants argue that
because the plaintiff did not allege in his complaint, amended
complaint or second amended complaint that he was prevented
from fully complying with the grievance system he should not be
permitted to raise that issue in opposition to their summary
judgment motion.  However, since the failure to exhaust
administrative remedies is an affirmative defense, the
plaintiff was not required to plead anything with regard to the
exhaustion of administrative remedies.

defaulted his claim against defendant Hollibaugh by failing to name Hollibaugh in his grievance.

In *Spruill, supra,* the Third Circuit addressed a claim that a prisoner had procedurally defaulted a claim by failing to name the defendant in his grievance.  The inmate in *Spruill* was a Pennsylvania inmate and thus the Third Circuit looked to DC-ADM 804 for what the grievance was required to contain. *Id.* at 233.

> DC-ADM 804 provides, in pertinent part:
>
> The inmate shall include a statement of the facts relevant to the claim.  The text of the grievance shall be legible, presented in a courteous manner, and the statement of facts shall not exceed two pages.  The inmate should identify any persons who may have information that could be helpful in resolving the grievance.  The inmate should also include information on attempts to resolve the matter informally.  The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.  The inmate may include a reasonable request for compensation or other legal relief normally available from a court.

DC-ADM 804, Part VI.A.1.g.  "The verbs in this paragraph establish three tiers of grievance components: items that are mandatory ("shall"); items that are required to the extent

practicable ("should"); and items that are optional ("may")."
*Spruill, supra,* 372 F.3d at 233.

The court in *Spruill* determined that DC-ADM 804 made it
mandatory for Spruill to include in his grievance the facts
relevant to his claim, that the identity of the defendant - a
physician assistant who allegedly did not provide Spruill with
needed medical treatment - is a fact relevant to his claim, and
that therefore it was mandatory for Spruill to include the
identity of the defendant in his grievance. *Id.* at 234.  The
court determined that Spruill procedurally defaulted his claim
against the physician's assistant by failing to identify him in
the grievance. *Id.*  However, the court further concluded that
the prison grievance process excused Spruill's procedural
default by identifying the physician's assistant by name in the
initial response to the grievance. *Id.*  The court reasoned that
the purpose of the regulation is to put prison officials on
notice of the persons claimed to be guilty of wrongdoing and
that "the prison can excuse an inmate's failure to do so by
identifying the unidentified persons and acknowledging that
they were fairly within the compass of the prisoner's
grievance." *Id.*

In the instant case, the plaintiff failed to name
defendant Hollibaugh in his grievance.  The identity of the
individuals alleged to have failed to protect the plaintiff
from his cellmate is a fact relevant to the plaintiff's claim
and therefore it was mandatory for the plaintiff to include
defendant Hollibaugh's name in his grievance.  By failing to
mention defendant Hollibaugh in his grievance, the plaintiff
procedurally defaulted his claim against defendant Hollibaugh.

Although the plaintiff procedurally defaulted his claim
against defendant Hollibaugh, that does not end our inquiry.
The plaintiff argues that his procedural default is excused
because defendant Hollibaugh in his response to the grievance
identified himself as someone fairly within the compass of the
grievance.

Defendant Hollibaugh's response to the plaintiff's
grievance reads:

> The basis of your grievance is that you believe
> that your were assaulted by your cellmate due
> to E-unit staff refusing to move you as
> requested.
>
> I have interviewed the E-unit 2-10 staff
> regarding your complaint.  Sgt. Emeigh informs
> be that the first time that you requested a
> cellmate change was on Friday 10/24/03.  Sgt.

Emeigh informed you that we would make a move
as space became available.

On Saturday 10/25/03, you spoke to CO I Wall
and CO I Rhodes again requesting a cellmate
change.  CO 1 Wall asked if you felt threatened
of if there was a possibility of a fight.  You
replied that you did not feel threatened.  You
also stated that you would be patient because
you understood that both of you were A.M.
kitchen workers and the kitchen tier was full.
You also looked at the celling board to see who
was available for you to cell with.

Upon review of your situation, I note that you
were celled with inmate Noble since 5/21/03.
You also changed cells, again with inmate
Noble, on 9/21/03.  There was no indication of
a problem between you and Noble until 10/24/03.

I also remember that you came into my officer
on Tuesday 10/28/03 and spoke to me concerning
your custody level.  At no time, did you
mention that you requested or needed a cell
change.  I have numerous inmates that come to
me requesting cell changes.  They are
accommodated as cell space becomes available.
You are well aware of this as you stated to CO
1 Wall that you would be patient due to the
kitchen tier being full.  If you knew that
situation was becoming volatile, you had every
opportunity to address this with myself, the E-
unit officers, your counselor, or by requesting
self-confinement.  As you did not acknowledge
or inform staff of the seriousness of the
situation, it was handled as a routine cell
change request as space became available.

You submitted a cell agreement request to CO 1
Wall requesting another inmate be moved in with
you. This would have been accommodated, again,
as space became available.

In conclusion, I reject your grievance as
lacking merit.  The E-unit staff had no

18

> knowledge that you would be assaulted by your
> cellmate.  At no time did you inform staff
> that your request for a cellmate change was
> due to the possibility of violence.  You were
> asked specifically if you felt threatened or
> if there was a possibility of violence.  You
> replied that you did not feel threatened and
> even acknowledged that you would be patient as
> you were aware that the move may take some
> time due to your employment situation.  You
> spoke to me the day before the assault and at
> no time did you mention that this was a
> serious concern and needed to be addressed
> immediately.  I find that the E-unit staff
> responded appropriately to your concerns as it
> was presented to them by you.

*Doc. 32, Exhibit 15.*

The plaintiff argues that, by writing in his response that the plaintiff did not mention to him in their conversation the day before the assault that the cell situation was a serious concern that needed to be addressed immediately, defendant Hollibaugh conceded that the issue was raised but disputes that it was emphasized.  The plaintiff argues that although defendant Hollibaugh did not identify any malfeasance on his part in his response it is not to be expected that he would do so when rejecting the plaintiff's grievance.  The plaintiff contends that, as was the situation in *Spruill,* defendant Hollibaugh identified himself as someone fairly within the compass of the

plaintiff's grievance thereby excusing the plaintiff's procedural default.

In *Spruill, supra,* the Third Circuit concluded that Spruill's failure to name Brown, a physician's assistant, in his grievance regarding the denial of medical care constituted a procedural default but that the prison excused that default by identifying Brown as someone who had seen Spruill in the course of his medical visits. 372 F.3d at 234.  The Court reasoned:

> But the prison's grievance process excused this procedural default: The grievance officer's "Initial Review Response" (the first-level determination under the Grievance System Policy) identified Brown by name. Although the response identified Brown only as someone who had seen Spruill in the course of his medical visits, it is not to be expected that a response rejecting Spruill's grievances on the merits would identify any malfeasance on Brown's part. The purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance.

> The point is close, but we conclude that the prison grievance officer's recognition that Brown was involved in the events that Spruill complained of excused any procedural defects in Spruill's initial grievances. Spruill's grievances and suit are not about specific instances of insulting treatment by Brown - there would be no constitutional

> violation there anyway. Rather, the grievances
> and the suit are about a larger-scale denial
> of adequate medical care, in which prison
> officials clearly knew Brown was alleged to be
> implicated. Thus we reject the District
> Court's dismissal of Spruill's suit against
> Brown on these grounds.

*Id.* at 234-35.

Unlike in *Spruill*, we conclude that the prison has not

excused the plaintiff's procedural default of not naming

defendant Hollibaugh in his grievance.  In *Spruill*, the issue

was the medical care received by Spruill and by naming Brown as

someone how had provided medical care to Spruill the prison

recognized that Brown was involved in the events about which

Spruill was complaining.  In this case, on the other hand,

defendant Hollibaugh in his response to the plaintiff's

grievance does not indicate that he recognizes that the

plaintiff is complaining about his conduct.  Defendant

Hollibaugh states in his response that at no time during the

conversation on October 28, 2003 did the plaintiff mention that

he requested or needed a cell change.  Given that statement, the

plaintiff's construction of defendant Hollibaugh's later

statement - that the plaintiff did not mention to him that the

cell situation was a serious concern that needed to be addressed

immediately - as a concession that the issue was raised is not

21

reasonable.  We conclude that the plaintiff procedurally defaulted his claim against defendant Hollibaugh by failing to mention Hollibaugh in his grievance and that that procedural default was not excused by defendant Hollibaugh's response to the plaintiff's grievance.

We note that the plaintiff points to evidence outside the grievance response that indicates that he made defendant Hollibaugh aware of his problems with his cellmate, that he was fearful something may happen and that he asked to be moved. *See Doc. 38, Exhibit 9 (Inmate Request to Staff Member dated October 20, 2003) and Doc. 38, Exhibit 10 (Inmate Request to Staff Member dated October 28, 2003).*  The plaintiff also testified at his deposition that when he spoke with defendant Hollibaugh about his custody level he also told him about the problems he was having with his cellmate. *Doc. 35, Exhibit 3 at 20-21.*  The plaintiff's testimony contradicts the statement made by defendant Hollibaugh in his response to the plaintiff's grievance that at no time during the conversation on October 28, 2003 did the plaintiff mention that he requested or needed a cell change.  However, in determining whether or not the prison excused a prisoner's failure to name a defendant in his

grievance we do not think it is appropriate to consider and weigh evidence outside the grievance and grievance response.

Because the plaintiff procedurally defaulted his claim against defendant Hollibaugh, we will grant summary judgment in favor of defendant Hollibaugh.

We turn now to the merits of the plaintiff's failure to protect claim against defendants Emeigh, Wall and Rhodes.

The Eighth Amendment prohibits cruel and unusual punishment.  "This constitutional limitation on punishment has been interpreted to impose a duty upon prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners.'"  *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir. 1997)(quoting *Farmer v. Brennan,* 511 U.S. 825, 833 (1994)).  Prison officials and employees may be liable for failure to protect an inmate if they are deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer, supra,* 511 U.S. at 834.  To establish an Eighth Amendment failure to protect claim, a plaintiff must establish (1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) causation. *Hamilton, supra,* 117 F.3d at 746.

The defendants argue that the plaintiff can not meet his burden of proving that they were deliberately indifferent to a substantial risk of serious harm to the plaintiff.  According to the defendants, the plaintiff did not inform them that he was in fear for his life or safety from his cellmate.

Defendant Emeigh testified that, approximately a week to ten days before the incident with his cellmate, the plaintiff came to him and asked if he could change cells because he was having a difference of opinion with his cellmate. *Doc. 36, Exhibit 4 at 19-21.*  Defendant Emeigh testified that he asked the plaintiff if it was an emergency or if he felt threatened. *Id. at 21.*  Defendant Emeigh testified that the plaintiff responded that it was not an emergency but that when something comes opens can he move out. *Id.*

Defendant Wall testified that the plaintiff talked to him numerous times about the problems he was having with his cellmate and that he asked to move out of the cell. *Doc. 36, Exhibit 5 at 23.*  Defendant Wall testified that he asked the

24

plaintiff if he felt threatened or if there is going to be a cell fight. *Id.*  Defendant Wall testified that the plaintiff said no there wasn't a threat like that and that he would be patient and wait until another cell was available. *Id. at 24 & 29.*  Defendant Wall testified that at no time did the plaintiff indicate any fear. *Id. at 35-36.*

Defendant Rhodes testified that he was not aware of any problems that the plaintiff was having with his cellmate and that he did not know why the plaintiff wanted to change cells. *Doc. 36, Exhibit 6 at 17 & 19.*  Defendant Rhodes testified that he had been told by defendant Emeigh to move the plaintiff whenever space became available but that defendant Emeigh did not mention any of the particulars about why the plaintiff was to be moved. *Id.*

In *Farmer*, supra, the Supreme Court explained the quantum of knowledge that must be possessed by a prison official necessary to satisfy the deliberate indifference standard.  The Court adopted the subjective recklessness standard found in the criminal law as the test for deliberate indifference under the Eighth Amendment. 511 U.S. at 839-40.  A prison official may be held liable under the Eighth Amendment if he knows that the

inmate face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Id*. at 847.  However, it is not enough that the defendant should have know that there was a substantial risk of serious harm to the prisoner. *Id*. at 843 n.8.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837.  A prisoner does not need to show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted of failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

The plaintiff testified at his deposition that he first told a staff member about his problems with his cellmate around the beginning of October. *Doc. 35, Exhibit 3 at 17-18.*  He testified that he told defendant Wall that he and his cellmate were not getting along, that something might happen in there and the he needed to be moved. *Id. at 18.*  He testified that he told defendant Wall that there was heavy tension in the cell and that he feared that something might happen in there. *Id.*  The plaintiff testified that defendant Wall told him to speak to the unit manager. *Id. at 19.*  The plaintiff testified that Hollibaugh was the unit manager and that he did speak with him. *Id. at 20.*[3]

The plaintiff testified that defendant Hollibaugh told him to speak with the sergeant and that he spoke with defendant Sergeant Emeigh. *Id. at 21.*[4]  The plaintiff did not testify to

---

[3] Since we have already decided, and stated above, that defendant Hollibaugh will be granted summary judgment because the plaintiff procedurally defaulted his claim against Hollibaugh, we do not recount the plaintiff's testimony regarding his contact and conversations with Hollibaugh.  The plaintiff has not argued that any of the other defendants were involved with, heard or were told about his conversations with Hollibaugh.

[4] The plaintiff actually testified that he spoke with

(continued...)

what he specifically told defendant Emeigh. *Id.* He testified that defendant Emeigh said he didn't have room and that he just shoved off the plaintiff's request. *Id.*

The plaintiff testified that he was told that he would be moved when space became available. *Id. at 23.* He testified that he stressed the importance of moving but "they didn't care." *Id.* He testified: "They didn't care, they thought it was a joke. You know, 'cause this Noble guy is a little guy and I'm a big guy, so — . Because I remember Rhodes made a remark to that. How can you be scared of that guy? You know, so they didn't really care." *Id. at 23-24.*

The plaintiff testified that he made a request to defendant Rhodes to be moved. *Id. at 27.* He testified that he made the request to defendants Rhodes and Wall and they laughed about the matter. *Id.* He testified that he gave his agreement to cell with another inmate to defendants Rhodes and Wall. *Id. at 28.*

---

[4](...continued)
Sergeant Amaker. However, the plaintiff later testified that when he referred to Sergeant Amaker he meant Sergeant Emeigh. *Id. at 27.*

28

The plaintiff also states in his declaration that during October of 2003, he asked the officers on his block to move him to another cell because he was afraid his cellmate might hurt him. *Doc. 37, Exhibit 8 at ¶5.*

Given the plaintiff's testimony that he told the defendants that he was in fear, we conclude that the plaintiff has presented evidence from which a reasonable trier of fact could conclude that the defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm to the plaintiff existed.  However, the plaintiff has not presented evidence from which a reasonable trier of fact could find that the defendants actually drew the inference that a substantial risk of serious harm to the plaintiff existed. *Id.* at 837.

The plaintiff argues that the risk of serious harm was obvious.

Subjective knowledge on the part of a prison official or employee can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. *Beers-Capitol v. Whetzel,* 256 F.3d

120, 133 (3d Cir. 2001). "[U]sing circumstantial evidence to prove deliberate indifference requires more than evidence that the defendants *should* have recognized the excessive risk and responded to it; it requires evidence that the defendant *must* have recognized the excessive risk and ignored it." *Id.* at 138

We conclude that the plaintiff has not presented evidence that the risk of serious harm was obvious.  The plaintiff has not presented evidence that the circumstances known to the defendants surrounding his relationship with his cellmate were such that the defendants must have known that there was a substantial risk of serious harm to the plaintiff. It is undisputed that the plaintiff's cellmate is a small man and that the plaintiff is a larger man. *Defendants' Statement of Material Facts Not in Dispute at ¶26 and the Plaintiff's Statement of Material Facts Not in Dispute at ¶26.*  It is also undisputed that the defendants were not aware of any prior assaults by the plaintiff's cellmate on other inmates during his current incarceration. *Id. at ¶27.*  Further, the plaintiff's own testimony that defendants Wall and Rhodes laughed at the idea that the plaintiff was in fear because the plaintiff's cellmate was smaller than the plaintiff cuts against drawing an inference

that the defendants actually believed that the cellmate presented a substantial risk of serious harm to the plaintiff.

A smaller inmate may present a serious risk to a larger inmate, especially if the smaller inmate has a weapon.  Maybe the defendants should have drawn the inference that there was a substantial risk of serious harm to the plaintiff.  However, the plaintiff has not presented evidence that the defendants did in fact draw that inference or that the risk of excessive harm to the plaintiff was so obvious that they must have drawn that inference.  Accordingly, defendants Emeigh, Wall and Rhodes are entitled to summary judgment.

**IT IS ORDERED** that the defendants' motion (doc. 26) for summary judgment is **GRANTED**.  The Clerk of Court is directed to enter judgment in favor of the defendants and to close the case. The pretrial conference scheduled for January 19, 2006 and the trial scheduled for February 6, 2006 are cancelled.  **IT IS FURTHER ORDERED** that the defendants' motion (doc. 54) to

31

continue all pretrial and trial dates until disposition of their

motion for summary judgment is **DENIED AS MOOT.**


*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: January 9, 2006.